1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARK A. TUCHECK,<br><br>               Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>               Defendant. | CASE NO. 12-cv-05161 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No.5 ; Consent to Proceed Before a United States Magistrate Judge, ECF No. 7). This matter has been fully briefed (*see* ECF Nos. 12, 13, 14).

After considering and reviewing the record, the Court finds that the ALJ failed to explain adequately why all of plaintiff's functional limitations regarding his ability to

work as opined by plaintiff's reviewing and examining doctors were not adopted fully into plaintiff's residual functional capacity. The ALJ also failed to provide specific and legitimate reasons for her failure to credit fully the opinions of examining doctor, Dr. Neims. Because these errors were not harmless, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

## BACKGROUND

Plaintiff, MARK A. TUCHECK, was born in 1964 and was forty three years old on his alleged date of disability onset of January 1, 2008 (*see* Tr. 140). Plaintiff has past relevant work as a construction worker, janitor, groundskeeper and landscape laborer (*see* Tr. 29). He has the severe impairments of left ulnar neuropathy, liver disease, substance abuse, personality disorder, mood disorder and anxiety disorder (*see* Tr. 21).

Plaintiff "was involved in a physical altercation and sustained a laceration to the left distal brachium close to the ulnar nerve" on February 17, 2008 (Tr. 22). As found by the ALJ, plaintiff "has residual numbness in the left ring and little fingers, which affects his gripping strength" (*id.*).

The ALJ's decision also includes notations to plaintiff's testimony, including testimony regarding plaintiff's "convictions for forgery, domestic violence, violation of no contact orders, and shoplifting," as well as plaintiff's allegations that he did not work due to panic disorder between 1997 and 2002; that he suffers from anxiety; and that he does not like having people around him or behind him (Tr. 24). Plaintiff also has alleged

that he was attacked and robbed on one occasion, and attacked and hit on the head on another occasion, but did not file a police report for either of these incidents (*see* Tr. 25).

PROCEDURAL HISTORY

Plaintiff protectively filed an application for Supplemental Security Income benefits on June 3, 2008, alleging disability beginning January 1, 2008 (*see* Tr. 140-43). His application was denied initially on September 10, 2008 and following reconsideration on January 5, 2009 (*see* Tr. 81-84, 87-89). Plaintiff's requested hearing was held before Administrative Law Judge Mary Gallagher Dilley ("the ALJ") on May 5, 2010 (*see* Tr. 38-78). On August 24, 2010, the ALJ issued a written decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 16-37).

On January 20, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in February, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative transcript regarding this matter ("Tr.") on May 14, 2012 (*see* ECF Nos. 9, 10). In his Opening Brief, plaintiff raises the following issues for judicial review: whether or not the ALJ committed harmful legal error by (1) failing to include all of plaintiff's relevant limitations into the ALJ's determination regarding plaintiff's residual functional capacity; and by (2) failing to evaluate properly the opinions of Dr. Daniel Neims, Psy.D. ("Dr. Neims") (*see* ECF No. 12, pp. 1-2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS

6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

1. **The ALJ failed to include all of plaintiff's relevant limitations into her determinations regarding plaintiff's residual functional capacity ("RFC"), including the limitations opined by Dr. Leslie Postovoit, Ph.D. and Dr. Mark Heilbrunn, M.D.**

If an ALJ cannot determine whether or not a claimant is disabled based on a claimant's current work activity or on medical factors alone and a claimant has a severe impairment, a review is made of the claimant's residual functional capacity ("RFC"). *See* Social Security Ruling "SSR" 96-8p, 1996 SSR LEXIS 5 at *3-*4. A determination regarding "residual functional capacity 'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Brown v. Astrue*, 405 Fed. Appx. 230, 233, 2010 U.S. App. LEXIS 26760 at **6 (9th Cir. 2010) (per curiam) (unpublished opinion) (*quoting id.* at *5) (*citing* 20 C.F.R. § 416.945; *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998)); *see also* SSR 96-8p, 1996 SSR LEXIS 5 at *5. Residual functional capacity is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c).

In addition, the ALJ must explain why "significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

    **a.  Dr. Leslie Postovoit, Ph.D.**

In this matter, state agency reviewing medical consultant, Dr. Leslie Postovoit, Ph.D. ("Dr. Postovoit"), reviewed plaintiff's medical record and provided a specific residual functional capacity assessment regarding plaintiff's RFC and ability to work (*see* Tr. 233-36). She opined that plaintiff suffered from various areas of moderate limitations, including the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to work in coordination with or proximity to others without begin distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (*see* Tr. 233-34).

Dr. Postovoit also opined that plaintiff suffered from moderate limitations in a number of social areas, including the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes (*see* Tr. 234). She opined that plaintiff suffered from moderate limitation in his adaptation ability to respond appropriate to changes in the work setting (*see id.*).

1      Dr. Postovoit indicated awareness of plaintiff's substance use and credibility

2  issues (*see* Tr. 235). In her summary conclusions, regarding understanding and memory

3  ("A"), and sustained concentration and persistence ("B"), Dr. Postovoit indicated her

4  opinion that plaintiff's anxiety would "reduce efficiency in busy, crowded environments"

5  (*see* Tr. 235). Regarding adaptation ("D") and social factors ("C"), she also indicated her

6  summary opinion that plaintiff would work best in a setting with limited need for contact

7  with the public and without need for ongoing negotiating with colleagues/supervisors, in

8  a smaller work unit or by himself, in a setting that is lower in work product demands (*see*

9  Tr. 236).

10

11      Defendant agrees with plaintiff that Dr. Postovoit's opinion "should be credited"

12  (*see* Defendant's Response, ECF No. 13, p. 7). However, defendant contends that Dr.

13  Postovoit's opinion only is relevant to the residual functional capacity as determined by

14  the ALJ including plaintiff's drug addiction and/or alcohol ("DAA") (*see id.*). Although it

15  is true that if plaintiff only were disabled due to his substance and/or alcohol use that the

16  award of benefits would be prohibited (*see* 42 U.S.C. § 1382c(a)(3)(J); *Sousa v.*

17  *Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998)), defendant fails to explain the argument

18  that Dr. Postovoit's opinion is not relevant to the RFC as determined by the ALJ if

19  plaintiff stopped alcohol or drug use/abuse (*see* Tr. 23, 31). In addition, this is not a

20  reason offered by the ALJ for a failure to include plaintiff's limitations as opined by Dr.

21  Postovoit into plaintiff's RFC. Although defendant also offers another reason as to why

22  the ALJ might not have credited fully Dr. Postovoit's opinion, "[l]ong-standing principles

23  of administrative law require us to review the ALJ's decision based on the reasoning and

actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *See Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted)); *see also Molina*, *supra*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42; *Stout*, *supra* , 454 F.3d at 1054 ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted).

The Court also notes that if "the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20. The ALJ failed to explain why she failed to credit fully Dr. Postovoit's opinion into plaintiff's RFC if he were to stop substance use or into the hypothetical presented to the vocational expert. *See id.*

Based on a review of the relevant record and for the reasons stated, the Court concludes that the ALJ erred in her RFC determination.

**b.  Dr. Mark Heilbrunn, M.D.**

Dr. Mark Heilbrunn, M.D. ("Dr. Heilbrunn") examined plaintiff and likewise provided functional assessments regarding plaintiff's ability to work (*see* Tr. 251-56). The ALJ gave Dr. Heilbrunn's opinions substantial weight and noted that Dr. Heilbrunn "performed a thorough evaluation" (*see* Tr. 28). Dr. Heilbrunn opined that plaintiff had "limitations in some fine and dexterous movements, manipulating with the left hand and in firm grasping, but is able to accomplish moderate grasping on the left" (*see* Tr. 255).

Plaintiff argues that this opined limitation was not credited fully within plaintiff's RFC or in the hypothetical presented to the vocational expert. Defendant responds that

plaintiff's argument "is simply wrong as a matter of fact," because the ALJ "explicitly included a limitation to only 'occasional grasping with the left, non-dominant hand'" (*see* Response, ECF No. 13, p. 7).

The Court is not convinced by defendant's argument, and finds persuasive plaintiff's argument that handling and grasping are different from fingering and manipulating (*see* Reply, ECF No. 14, pp. 5-6). Plaintiff notes also that the housekeeper job identified by vocational expert as work that plaintiff could perform entails frequent handling and occasional fingering (*see id.*, p. 6). The fact that the ALJ addressed Dr. Heilbrunn's limitation regarding grasping does not mean that the limitations opined by Dr. Heilbrunn with respect to fine and dexterous movements and manipulating with the left hand, were considered (*see* Tr. 31-32, 75, 255).

For the reasons stated and based on a review of the relevant record, the Court concludes that the ALJ erred in her RFC determination with respect to the opinions of both Drs. Postovoit and Heilbrunn.

Based on a review of the relevant record, the Court concludes that these errors are not harmless errors, as these findings by the ALJ regarding the medical evidence involve the determination of plaintiff's residual functional capacity, both with and without substance use, and thus are relevant to the ultimate decision regarding disability. *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki, supra*, 556 U.S. at 407 (2009); *Stout, supra*, 454 F.3d at 1054-55. Therefore this matter shall be reversed and remanded to the Administration for further consideration.

2. **The ALJ failed to evaluate properly the opinions of Dr. Daniel Neims, Psy.D. ("Dr. Neims")**.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes, supra*, 881 F.2d at 751).

Dr. Neims examined and evaluated plaintiff on April 20, 2010 (*see* Tr. 446-58). In addition, he reviewed background data on plaintiff and indicated in this regard that the "psychological assessment of M. Corpolongo, Ph.D. dated 8-19-09 [was] read and appreciated" (*see* Tr. 447).

Dr. Neims indicated his observation that plaintiff exhibited a "labile, shallow, or coarse affect" to a mild degree of severity, and noted that plaintiff exhibited memory issues (*see* Tr. 448). Dr. Neims also indicated that he observed various symptoms that he opined would affect work activities (*id.*). For example, Dr. Neims indicated that he observed anxious arousal in plaintiff opined to have a markedly severe effect on

plaintiff's work activities ("very significant interference"), in that plaintiff would be anxious; hypervigilant; and "fearful with patterns of generalized rumination and fearfulness" (*see id.*). Dr. Neims also observed symptoms of plaintiff's traumatic stress, and Dr. Neims opined that such symptoms would have a moderately to markedly severe effect on plaintiff's work activities (*see id.*).

Regarding plaintiff's mood, Dr. Neims indicated that he observed depressive symptoms, and Dr. Neims opined that these symptoms would have a moderate effect on plaintiff work activities ("significant interference") (*see* Tr. 448). Dr. Neims diagnosed plaintiff with PTSD, chronic; Anxiety Disorder, NOS (not otherwise specified); Polysubstance dependence by history; and rule-out diagnosis of cognitive disorder NOS by history (*see* Tr. 449). Dr. Neims assigned plaintiff a global assessment of functioning ("GAF") of 48.

Regarding specific functional limitations on plaintiff's ability to work, Dr. Neims opined that plaintiff suffered from markedly severe limitations on his ability to exercise judgment and make decisions; and on his ability to interact appropriately in public contacts (*see* Tr. 450). Dr. Neims also opined that plaintiff suffered from a number of moderately severe limitations on his ability to work, such as his ability to learn new tasks; perform routine tasks; relate appropriately to co-workers and supervisors; respond appropriately to and tolerate the pressures and expectations of a normal work setting; and to maintain appropriate behavior in a work setting (*see id.*). Dr. Neims indicated that plaintiff's psychological test results regarding "measures of validity were intact

suggesting no tendencies towards negative impression management or fake bad responding" (Tr. 454).

The ALJ discussed Dr. Neims opinions (*see* Tr. 28). However, the ALJ indicated that she assigned "some weight to the opinion of Dr. Neims, but less than that accorded the treatment records from Dr. Guitierrez" (*id.*). The ALJ gave no further explanation as to why the opinions of Dr. Neims were not credited fully. This is legal error because even though Dr. Neims's opinion may have been contradicted by the treatment records of Dr. Guitierrez, the ALJ did not explain how she interpreted the records of Dr. Guitierrez such that the specific opinions of Dr. Neims were rejected appropriately. The ALJ did not cite any specific functional assessments by Dr. Guitierrez that she was adopting in favor of the specific functional assessments by Dr. Neims, which were supported by Dr. Neims' evaluation and mental status examination ("MSE").

As Dr. Neims was an examining doctor, his opinions could be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043). An ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *See Reddick, supra*, 157 F.3d at 725 (*citing Magallanes*, *supra*, 881 F.2d at 751).

Here, the ALJ's decision to fail to credit fully the opinions of Dr. Neims' in favor of the treatment records from Dr. Guitierrez was not backed by a detailed and thorough summary of the facts and conflicting evidence; and was not based on substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750. Although defendant provides

some reasons as to why the ALJ may have decided to favor the record of Dr. Guitierrez in favor of the specific functional opinions of Dr. Neims, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." See *Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted)); *see also Molina*, *supra*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42; *Stout*, *supra* , 454 F.3d at 1054.

Because the Court already has decided that this matter should be reversed and remanded for further consideration and a determination anew of plaintiff's residual functional capacity, *see supra*, section 1, the Court concludes also that the opinions of Dr. Neims should be evaluated anew following remand of this matter.

## CONCLUSION

The ALJ failed to provide a written decision that sufficiently explained the facts and her resolution of the conflicting medical evidence.

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 23rd day of November, 2012.

J. Richard Creatura
United States Magistrate Judge